Filed 12/12/24

STATE OF VERMONT

SUPERIOR COURT                                          CIVIL DIVISION
Windham Unit                                           Docket 23-SC-2640


RODBARD PAYNE-MEYER

v.

DEBORAH TOBEY


## DECISION

A hearing on the merits was held on December 9, 2024. Both parties represented themselves and participated by Webex. Plaintiff seeks to collect the balance of an invoice for work performed. Defendant claims that the bill exceeded the contract price and that the work was defective. Based on the credible evidence, the court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

Plaintiff Payne-Meyer is a contractor engaged in landscaping services, including stone installations, under the name of Creative Landscapes. In the spring of 2023 Defendant Tobey contacted him, and he visited her property to discuss her intended project. On the third visit, they walked together around the project site and Mr. Payne-Meyer prepared a plan showing the work to be done (Exhibit 8). It was agreed to by Ms. Tobey and they signed a contract for him to perform the work as shown on the plan. It included building stone steps off the back side of her home with side stone walls, making a stone patio extending out from the bottom of the steps into the back yard, and creating a stone path from the driveway around the side of the house to the patio. The contract specified an estimated of cost $13,000-14,000. Pursuant to the contract, she paid a deposit of $6,500.

During the work, two additions were made and agreed to by Ms. Tobey, although there were no written change orders: the stone path was going to have to be 4 feet longer, requiring more stones to cover an additional 32 square feet of space, and an additional low stone wall was needed in connection with the grade of the patio. In addition, more topsoil than originally anticipated was needed to blend the grade of the lawn and patio. All three of these changes called for additional materials and labor, thus increasing the cost. There is no evidence that Ms. Tobey disagreed with or objected to these changes at any time.

Ms. Tobey is a good gardener and had a beautiful lilac bush, admired by Mr. Payne-Meyer, next to the house near where the stones would have to be brought into the backyard. Mr. Payne-Meyer said he thought that it would be possible to avoid it. She testified that she requested that the stones be "staged" in the driveway and not the backyard.

1

The work began, much of it done by Mr. Payne-Meyer's two sons and another person. On the first day, Ms. Tobey discovered that the lilac had been cut down and a large truck with stones was in the backyard. She complained. Mr. Payne-Meyer does not recall her request for the stones to be staged in the driveway and testified credibly that that would not have worked. He told her at the time that it turned out that there had not been enough room for the truck to get by the lilac, and it could either regrow from its roots or be replaced. During the afternoon she was gone and when she got home that evening, it had been pulled out by the roots.

On June 11, 2023, Ms. Tobey requested by text that he use solid fill between the patio stones and not use pea gravel. He responded that he would use stone dust. She now complains that he used pea stones, which she did not want. He testified credibly that he used 3/8" crushed stone, not pea stones, and that crushed stone is common for patios and is superior to pea stones in that it provides good drainage and does not move.

By June 30th, Mr. Payne-Meyer's crew had finished the stonework, cleaned up the back yard, brought in topsoil and applied grass seed and straw. Ms. Tobey was unhappy that many of the stones had scratches and chisel markings from the quarry, and one stone had split. Mr. Payne-Meyer's son offered to try and treat the marks to minimize their appearance and glue the broken stone, and 'give it a week.' Mr. Payne-Meyer himself thought that the broken stone would need to be replaced, but Ms. Tobey said it looked okay so he did not do so. On July 5, after the week, Ms. Tobey was still not satisfied with the markings on the patio stone. In July, Mr. Payne-Meyer offered to come back to address remaining issues (which would have included replacing the lilac), but Ms. Tobey informed him that his services were no longer needed.

He sent a total bill for $16,122.77, of which $6,500 was previously paid, so the balance was $9,622.17. On July 31, 2023, she sent a check of $5,000 with a letter stating that although "[f]rom a distance the patio looks great," she complained that the patio stones were damaged, the lilac was removed without her knowledge or consent, waste was dumped on the neighbors' property, and excess stones and gravel were buried throughout the back yard, including where she had planned to have gardens. She stated that it was her final payment.

He contacted her twice in August seeking to follow up. In September he emailed her 'seeking a resolution,' noting that she hadn't given him a chance to rectify any problems, and seeking final payment. She responded stating that his work was substandard and she did not want him to come back. He filed this suit in December.

The court cannot find that the work done was substandard or failed to fulfill contract requirements. Ms. Tobey claims that two unidentified architects have told her that it was substandard, but that is not sufficiently reliable or credible to prove defective stonework. The court finds credible Mr. Payne-Meyer's testimony that chisel marks are normal for this type of stone as patio stones are quarried in a manner that leaves marks where the stones have been cut from a large block. There is no evidence that the contract provided for a type or quality of stone other than what was used and testified by Mr. Payne-Meyer as normal. Ms. Tobey may now wish that the project had been done with a different quality of stone, but that was not part of the contract and a different grade of stone might have had an impact on cost.

2

Ms. Tobey testified that Mr. Payne-Meyer knew that she wanted to plant gardens in the back yard and that she wanted to bring in high qualify soil and compost for the purpose, and instead his crew buried stones underneath the ground and covered the whole yard with clay. The sketch that formed the basis of the contract does not show a plan for gardens. The credible evidence is that there was no agreement that specific areas of the back yard would be prepared for future gardens. The credible evidence also is that the yard was spread with topsoil, not clay, when seeded when the work was done. Mr. Payne-Meyer acknowledges that some stones and gravel were buried beneath the ground but testified credibly that they are reasonably deep and that this is a normal practice that does not interfere with lawn growth. While some stones may be where she wanted to have gardens, the project plan and contract did not provide for certain areas of the backyard ground to be treated in a manner to be prepared for future gardens. The court finds credible Mr. Payne-Meyer's testimony that Ms. Tobey said that the glued stone looked okay and so he did not understand a need to replace it.

As to the lilac, the evidence is that Mr. Payne-Meyer tried twice to be allowed to come back to rectify problems and was prevented from returning by Ms. Tobey. He testified that he was prepared to replace the lilac with an equal or similar tree, but she precluded him from doing so. She claims that there is a loose stone in one of the stone walls. She has not asked or allowed him to come back to fix it but now claims it is part of substandard work.

The contract did not include specifications for a particular type of patio stone to be used and specified an estimated cost. Ms. Tobey did not refute that the three additions to the scope of the project were needed and done. There is no testimony that the $2,122 over and above the high estimate of $14,000 was not reasonable in amount for the additional work performed. Most of her complaints were made after she received the final bill and when she would not allow him to return to address remaining issues.

It is clear that Ms. Tobey is not satisfied with details of the work, particularly the quarry marks on the patio stone. She claims that the work that was done was contrary to the contract and that she made no changes or additions yet the estimate was exceeded by over $2,000. She testified that it would cost her $20,000-21,000 to "repair the damage." While she may be disappointed that there are marks on the patio stones and the backyard lawn soil was not the quality that she desires for planting new gardens and that there are buried stones underground, she has not shown that Mr. Payne-Meyer did not fulfill contract requirements or overcharge her for the work done. To the extent the lilac has not been replaced and the loose stone fixed, that is due to her preventing him for returning to follow up.

### Conclusions of Law

Plaintiff has proved that the parties had a contract for identified landscaping work to be done at an estimated cost of $13,000-14,000, that there were three additions to the scope of the project that were necessary and not disputed by Ms. Tobey and increased the total cost to $16,122.77, and that he fulfilled the terms of the contract and was willing to come back and rectify some matters about which she was not satisfied, including replacing a special lilac, but she prevented him from doing so.

3

Defendant has not proved that Plaintiff failed to perform the contract, or that his work was substandard and requires redoing or repair to satisfy the requirements of the contract.

Defendant has paid $11,500 of the total bill of $16,122.77, leaving a balance due of $4,622.77. Plaintiff is entitled to a judgment in that amount, plus the filing fee.

Electronically signed December 12, 2024 pursuant to V.R.E.F. 9 (d).

*Mary Miles Teachout*

Mary Miles Teachout
Superior Judge (Ret.), Specially Assigned

4